Signed and Filed: February 23, 2015

**HANNAH L. BLUMENSTIEL**
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) Case No. 13-31179 HLB )|
| WANDA R. OGILVIE, | ) Chapter 13 ) |
| Debtor. | ) ) |
| ZENAIDA BARR, | ) Adv. Proc. No. 13-03221 HLB ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| WANDA R. OGILVIE, | ) ) |
| Defendant. | ) |

### MEMORANDUM DECISION FOLLOWING TRIAL

This action came before the court on February 18, 2015 for trial on Plaintiff Zenaida Barr's complaint, which she filed in her individual capacity and as administrator of and successor in interest to the estate of Regina Barr. Zenaida Barr contends that a debt allegedly owed to her by Defendant and Debtor Wanda Ogilvie should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and/or (a)(6).[1] As

---

[1] Unless otherwise noted, all statutory citations shall refer to Title 11 of the United States Code (the "Bankruptcy Code"), 11 U.S.C. § 101 et seq., and all citations to rules of procedure shall refer to the Federal Rules of Bankruptcy Procedure (each a "Bankruptcy Rule").

MEMORANDUM DECISION FOLLOWING TRIAL - 1 -

explained below, the Court finds that Ms. Barr has failed to prove all essential elements of her claims; therefore, judgment should be entered in favor of the Defendant on all counts.[2]

**Findings of Fact**

Regina Barr is Ms. Ogilvie's half-sister and Zenaida Barr's mother. In July 2004, Regina Barr received an inheritance totaling $152,486.04 (the "Inheritance") from the probate estate of her deceased father, Earl Barr.

Throughout her adult life, Regina Barr suffered from severe, and ultimately fatal, health problems. Aware that she might not live to see her daughter into adulthood, Regina Barr hoped to leave some or all of the Inheritance to Zenaida Barr. Regina Barr passed away in July 2009 at the age of 45, leaving Zenaida Barr as her only heir.

The Court received conflicting evidence as to what steps Regina Barr took to fulfill her wish to provide for her daughter. Zenaida Barr, as well as witnesses Marvyce Barr (Regina Barr's half-sister) and Desiree Zuniga (a family friend), testified that Regina Barr gave some or all of the Inheritance to Ms. Ogilvie for safekeeping. Ms. Ogilvie testified that when Regina Barr received her inheritance, she and Ms. Ogilvie went together to a bank, cashed the Inheritance check and used the proceeds to purchase two money orders, the amounts of which she could not recall, but which she believed

---

[2] This memorandum decision constitutes the findings of fact and conclusions of law required by Rule 52(a)(1) of the Federal Rules of Civil Procedure, which applies in this action pursuant to Bankruptcy Rule 7052. This is a core proceeding in which the Court may enter final judgment. 28 U.S.C. § 157(b)(2)(I).

**MEMORANDUM DECISION FOLLOWING TRIAL**

added up to the full amount of the Inheritance. These money orders were made payable to Ms. Ogilvie, who then cashed the money orders and gave the cash back to Regina Barr. According to Ms. Ogilvie, Regina Barr hoped to conceal her receipt of the Inheritance from government agencies through which she received financial assistance, as she would become ineligible for such assistance if the Inheritance came to light. Ms. Ogilvie claims that, other than as part of the foregoing transaction, Regina Barr never gave a dime of the Inheritance to her for safekeeping.

On the issue of whether Regina Barr gave some or all of the Inheritance to Ms. Ogilvie for safekeeping, the Court finds the testimony of Zenaida Barr, Marvyce Barr, and Desiree Zuniga most credible and convincing. Each of them testified to having heard from Regina Barr during her lifetime that she had given some or all of the Inheritance to Ms. Ogilvie for safekeeping.[3] This version of events also squares with the undisputed evidence that Regina Barr depended on public assistance during the entire period relevant to this action, as her health issues prevented her from working. The parties do not dispute that, had the government agencies providing assistance to Regina Barr become aware that she had received the Inheritance, they might have terminated her public benefits, including the health care upon which she depended.

The precise terms of the arrangement between Regina Barr and Ms. Ogilvie never became clear during trial, in part

---

[3] This testimony is excepted from the rule against hearsay by Rule 804(a)(4) of the Federal Rules of Evidence.

because neither party introduced any writing or other conclusive evidence concerning the alleged trust relationship. Zenaida Barr insists that Ms. Ogilvie cajoled Regina Barr into letting her hold the Inheritance, falsely promising to keep it safe and to pass it to Zenaida Barr when she came of age and/or needed the funds for living and educational expenses. Zenaida Barr urges the Court to find that Ms. Ogilvie wanted the Inheritance for herself and, once she possessed it, she spent a significant portion on clothing and gambling.

Establishing that Ms. Ogilvie came into possession of some or all of Regina Barr's Inheritance begs the question of what happened to the funds thereafter. The Court received little helpful evidence on this issue: Plaintiff did not provide bank statements, copies of checks, credit card statements, invoices or any other documentary evidence that might have assisted with tracing the funds and identifying exactly who spent how much, when, and for what. The Court must therefore rely on the hazy memories of witnesses who told the truth as best they could but whose recollections have faded with the passage of time.

Zenaida Barr testified that her mother spent at least $20,000 of the Inheritance on new furniture and a car.[4] Additionally, unquantified sums were spent on insurance for the car. Zenaida Barr candidly admitted that Ms. Ogilvie provided her with at least $3,000 from the Inheritance for educational and other expenses. Still further, Regina and Zenaida Barr lived in an apartment building owned by Ms. Ogilvie. Their

---

[4] Ms. Ogilvie held title to this car, allegedly for the same reason Regina Barr did not want government agencies to become aware of the Inheritance.

**MEMORANDUM DECISION FOLLOWING TRIAL**

tenancy began shortly after Regina Barr's receipt of the Inheritance and ended approximately one year after her death. Although a large portion of their rent was covered by a governmental housing subsidy, they remained responsible for approximately $350 per month. Zenaida Barr estimated that Ms. Ogilvie deducted this amount from the Inheritance no fewer than eight times per year. Multiplying this frequency by the seven relevant years results in a further deduction of $19,600. Zenaida Barr's trial brief concedes that Regina Barr allotted $2,000 of the inheritance to Ms. Ogilvie for expenses associated with its safekeeping. All told, Zenaida Barr's testimony accounts for roughly $50,000 of the Inheritance. The rest, she says, Ms. Ogilvie spent on herself, although Zenaida Barr did not testify to having personal knowledge of the source of funds Ms. Ogilvie used for her personal expenses. She simply assumes – and insists that this Court assume – Ms. Ogilvie used the remaining Inheritance for that purpose.

To corroborate this, Zenaida Barr offered the testimony of Ms. Desiree Zuniga, a close, lifelong friend of Regina Barr's. Ms. Zuniga testified that she once accompanied Regina Barr to Ms. Ogilvie's house and saw Ms. Ogilvie and her daughter thumbing through catalogs and ordering clothing. She implied that the only way Ms. Ogilvie could have paid for these luxuries was by spending the Inheritance.

Ms. Zuniga also testified that Regina Barr and Ms. Ogilvie frequently went to local casinos and gambled. She suggested that Ms. Ogilvie's gambling habits were excessive and that she gambled away a great deal of the Inheritance. Ms. Zuniga did

not accompany Regina Barr and Ms. Ogilvie on their trips to casinos, nor did she testify to any personal knowledge of the source of funds Ms. Ogilvie used for gambling. While the Court believes that Ms. Ogilvie and Regina Barr went to casinos together, the Court cannot accept as fact Ms. Zuniga's speculation that Ms. Ogilvie gambled away the Inheritance.

Simply put, the Court received no conclusive proof as to what happened to approximately $100,000 of the Inheritance, yet Zenaida Barr insists that the Court infer or assume that Ms. Ogilvie frittered it away. The Court cannot reasonably draw such an inference from the slim record created at trial.

## Conclusions of Law

Zenaida Barr contends in her trial brief that Ms. Ogilvie is indebted to her in the amount of $400,000, which represents $150,486.04 of the Inheritance (less the $2,000 of expenses she concedes to Ms. Ogilvie)[5], punitive damages, attorneys' fees, and court costs. Zenaida Barr alleges that this debt should be declared nondischargeable under sections 523(a)(2)(A), (a)(4) and (a)(6) of the Bankruptcy Code.

**Section 523(a)(2)(A) – money obtained by fraud or false pretenses**

Section 523 excepts from discharge any debt for "money, property or services . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). In order to prevail, a creditor must prove all of the following by a preponderance of the evidence:

---

[5] Without explanation, Zenaida Barr made no allowance in her trial brief for the other legitimate expenses she admitted at trial were paid from the Inheritance.

MEMORANDUM DECISION FOLLOWING TRIAL - 6 -
Case: 13-03221    Doc# 43    Filed: 02/23/15    Entered: 02/23/15 16:32:37    Page 6 of 12

(1) the existence of a misrepresentation, fraudulent statement or omission by the debtor; (2) that the debtor knew of the falsity or fraudulent nature of his or her statements or omissions or actions at the time they were made or taken; (3) that the debtor intended to deceive the creditor; (4) that the creditor justifiably relied on the debtor's misrepresentations, omissions or actions; and (5) that the creditor suffered damages as a result of his or her justifiable reliance. Grogan v. Garner, 498 U.S. 279, 290 (1991) (setting forth burden of proof); American Express Travel Related Services Co. v. Hashemi (In re Hashemi), 104 F.3d 1122, 1125 (9th Cir. 1996) (setting forth burden of proof and elements of a claim under section 523(a)(2)(A)); Citibank (South Dakota), N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1086 (9th Cir. 1996) (same).

Zenaida Barr asserts that Ms. Ogilvie convinced Regina Barr to give her the Inheritance by falsely promising to keep the money safe and to use it to pay for Zenaida Barr's living and educational expenses. Instead, according to Zenaida Barr, Ms. Ogilvie intended to keep as much of the Inheritance as possible for herself and, once she got it, spent the majority on gambling and personal luxuries.

As previously mentioned, the Court does not doubt that Regina Barr gave some or all of the Inheritance to Ms. Ogilvie for safekeeping. But on the record before it, the Court cannot find that, in order to convince Regina Barr to do so, Ms. Ogilvie falsely promised to hold it in trust for Regina and Zenaida Barr's needs. Rather, the evidence leads the Court to the conclusion that Regina Barr gave the Inheritance to Ms.

Ogilvie because she wanted to avoid the scrutiny of the government agencies upon whose assistance Regina Barr relied. This conclusion also finds support in the sums Zenaida Barr admits she and/or Regina Barr received from Ms. Ogilvie or that Ms. Ogilvie used for their benefit. While no one can account for the majority of the Inheritance, the Court does not find it reasonable on this record to infer that Ms. Ogilvie spent it on her personal expenses.

In order to prevail, Zenaida Barr was required to prove that Ms. Ogilvie convinced Regina Barr to give her the Inheritance by making false promises as to its safekeeping. Quite simply, Zenaida Barr did not sustain her burden of proof on this critical issue.

**Section 523(a)(4) – fraud by a fiduciary; embezzlement; larceny**

Section 523 excepts from discharge debts incurred as a result of fraud while the debtor is acting in a fiduciary capacity, or as a result of embezzlement or larceny. 11 U.S.C. § 523(a)(4). A creditor can prevail if he or she proves by a preponderance of the evidence that: (1) an express trust existed; (2) the debt was caused by fraud or defalcation; and (3) the debtor acted as a fiduciary to the creditor at the time the debt was created. Otto v. Niles (In re Niles), 106 F.3d 1456, 1459 (9th Cir. 1997); Lovell v. Stanifer (In re Stanifer), 236 B.R. 709, 713 (B.A.P. 9th Cir. 1999) (burden of proof).

For purposes of § 523(a)(4), the Ninth Circuit has narrowly construed "fiduciary capacity" to apply only to relationships involving express or technical trust

relationships, and not trusts that are imposed by law as a remedy. Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1125 (9th Cir. 2003). The determination relies upon whether the requisite trust relationship exists under state law. Id.

Neither party briefed the issue of whether and how the arrangement between Regina Barr and Ms. Ogilvie created an express trust under California law. But generally, an express trust is created when two parties agree to impose a trust relationship. Schlecht v. Thornton (In re Thornton), 544 F.2d 1005, 1007 (9th Cir. 1976). The general characteristics of an express trust are: (a) sufficient words to create a trust; (b) a definite subject; and (c) a certain object or res. Id.

In this case, the existence of an express trust is defeated by the testimony of Marvyce Barr, who testified that, in explaining that she had given some or all of the Inheritance to Ms. Ogilvie for safekeeping, Regina Barr did not specify that she wanted to establish a trust. Rather, Marvyce Barr testified that Regina Barr only said she wanted Zenaida Barr cared for. In the absence of an express trust, Zenaida Barr cannot prevail on her claim under section 523(a)(4).

Even assuming an express trust existed, however, Zenaida Barr also has failed to prove that fraud or a "defalcation" occurred. For purposes of section 523(a)(4), a "defalcation" requires "the misappropriation of trust funds or money held in any fiduciary capacity; [or the] failure to properly account for such funds." Stephens v. Bigelow (In re Bigelow), 271 B.R. 178, 186 (B.A.P. 9th Cir. 2001). Defalcation contemplates a

culpable state of mind involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant behavior.  Bullock v. BankChampaign, N.A., _U.S._, 133 S.Ct. 1754, 1759 (2013).

As indicated above, the Court has concluded that Ms. Ogilvie did not falsely promise to hold the Inheritance for safekeeping.  But beyond that, the Court finds that the evidence it received also did not prove Ms. Ogilvie misappropriated the money she held.  In fact, the only conclusive evidence the Court received indicates that at least one third of the Inheritance was spent on Regina and/or Zenaida Barr's living expenses.  The Court received no probative, credible evidence as to what happened to the remainder of the Inheritance and the Court declines Zenaida Barr's invitation to infer that Ms. Ogilvie wasted it.

Given that Plaintiff has failed to prove the existence of an express trust or that fraud or defalcation by a fiduciary occurred, she cannot prevail on her claim under section 523(a)(4).

**Section 523(a)(6) – willful and malicious injury**

Section 523 excepts from discharge debts incurred as a result of willful and malicious injury by the debtor to another entity or to another entity's property.  11 U.S.C. § 523(a)(6). In order to prevail, a creditor must prove by a preponderance of the evidence the existence of a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."  Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998); Peklar v. Ikerd (In re Peklar), 260 F.3d 1035, 1038 (9th Cir.

MEMORANDUM DECISION FOLLOWING TRIAL - 10 -
Case: 13-03221   Doc# 43   Filed: 02/23/15   Entered: 02/23/15 16:32:37   Page 10 of 12

2001) (same); Molina v. Seror (In re Molina), 228 B.R. 248, 251 (B.A.P. 9th Cir. 1998) (setting forth burden of proof).

Here again, the Court received no evidence that suggested, let alone proved, that Ms. Ogilvie willfully or maliciously inflicted injury upon Regina or Zenaida Barr by falsely promising to hold the Inheritance or by wasting it. As previously explained, the record reflects no false promise and is silent as to what happened to most of the Inheritance, other than establishing that at least one third of it went toward Regina and/or Zenaida Barr's living expenses. Without a willful and malicious act that caused injury to Zenaida Barr, she cannot prevail on her claim under section 523(a)(6).

## Conclusion

Plaintiff Zenaida Barr has not succeeded in proving all required elements of her claims under sections 523(a)(2)(A), (a)(4) or (a)(6) of the Bankruptcy Code. Accordingly, the Court shall enter judgment in favor of the Defendant on all counts.

**\*\*END OF ORDER\*\***

## Court Service List

[None]